## CAHALAN *v.* McTague.

### (*Circuit Court, D. Montana.* April 20, 1891.)

1. PUBLIC LANDS—RAILROAD GRANTS.

  The fact that public land is in the possession of a settler, who is living on it, without complying with either the pre-emption or the homestead law at the time the land is included in a grant to a railroad company, does not keep it from being public land not reserved, sold, granted, or otherwise appropriated.

2. SAME—PRE-EMPTION.

  Right of pre-emption cannot be acquired by forcibly intruding upon land in the possession of one who has settled upon, improved, and inclosed it. Following *Atherton* v. *Fowler,* 96 U. S. 513.

At Law. On demurrer to answer.
*Cullen, Sanders & Shelton,* for plaintiff.
*Word & Smith,* for defendant.

KNOWLES, J. The plaintiff sets forth in his complaint facts sufficient to show that the Northern Pacific Railroad Company received from the United States a grant to the S. W. ¼ of the S. W. ¼, the S. W. ¼ of the N. W. ¼, and the N. ½ of the S. W. ¼ of section 11 in township 13 N., of range 12 W. of the principal meridian for Montana, situate in Deer Lodge county, territory (now state) of Montana; that plaintiff purchased said premises from said railroad company, and was in the actual possession of said premises, when, on the 21st day of March, 1889, defendant entered upon the same, and took possession thereof, without plaintiff's consent, and now withholds possession thereof from plaintiff. Defendant sets forth in his answer to said complaint that in the month of September, 1871, one Louis B. Barthelotte, with his family, settled upon the premises in dispute, and occupied and improved the same as a home, and with his family continued to reside and live upon said land, and to cultivate the same, and on the 13th day of June, 1878, made application at the United States land-office at Helena, Mont., to enter the said land under the laws of the United States; that said application was allowed by the United States land-office; that said Barthelotte and his grantees remained upon, occupied, used, and enjoyed said land as a home, and were in the use, occupation, and enjoyment, and possession of said land on the 6th day of July, 1882, at which time the Northern Pacific Rail-

road Company filed its map and location of its line of its road, as definitely fixed, in the office of the commissioner of the general land-office, and on said date the land was in the absolute possession and under the control of the said Louis B. Barthelotte and his grantees, occupied as a home. But it is further alleged that on the 29th day of July, 1880, the said Barthelotte sold his right, title, and interest in and to the improvements on said land to Pat Cahalan, a citizen of the United States, and the said Cahalan then and there went into the possession of said land and held it until the 21st day of March, 1889, when defendant entered into possession of the same, and filed his declaratory statement, and made his pre-emption entry, upon said land, and that he is using, occupying, and holding possession thereof. It is also alleged that the Northern Pacific Railroad Company filed a map of its general route, in the proper office, in the month of February, 1872, and it would appear that said land was surveyed in 1872. The plaintiff demurred to this answer, on the ground that it did not state facts sufficient to constitute a defense to plaintiff's cause of action as set forth in his complaint. This presents to the court for consideration the question as to whether the premises in dispute under the allegations in the answer were public lands not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of the said Northern Pacific Railroad Company's railroad was definitely fixed and a plat thereof filed in the office of the commissioner of the general land-office, which act, it appears, was performed on the 6th day of July, 1882.

The answer is somewhat confusing in its allegations. In one part of the same it is set forth that the said Barthelotte and his grantees were in possession of said premises on the 6th day of July, 1882, when the line of said railroad was definitely fixed, and the map thereof filed in the proper office; and in another part of the same it sets forth that on the 29th day of July, 1880, said Barthelotte had sold his improvements to plaintiff, who then went into possession of said premises, and the whole thereof. In the first part of the answer the allegations would bear the construction that Barthelotte and his grantees were in the joint occupation of said premises on July 6, 1882; and in the latter part it fully appears that only Cahalan was in the sole possession of them at that time, and that in 1880 Barthelotte had relinquished all claim to pre-empt said land. This presents a very different phase to this contest. I think defendant must be held to the latter allegations; that in this particular the allegations of the answer must be construed most strongly against him. No liberal construction of them could place defendant in any different light. I must consider that Cahalan was in the sole possession of said land on July 6, 1882, and Barthelotte had relinquished all claim to purchase the premises from the United States. It does not appear that Cahalan, after he went into possession of said premises, sought to pre-empt, or make a homestead entry on the same. He was simply occupying the premises at the date of the definite fixing of the line of said company's road, and can be considered nothing but a squatter thereon, with no definite purposes in regard thereto at that time. Subsequently he purchased of said company its right to said

land. The occupation of said land, alone, by Cahalan would not be a pre-emption claim or a homestead claim, and it is not suggested what other claim or right it would be. A person who enters upon the land of the United States without any purpose of obtaining title from the United States in accordance with federal laws has no lawful right to be there. In fact, as against the United States he is a trespasser. And this purpose of obtaining title from the United States should be manifested by some acts, or a reasonable excuse for not proceeding under the statutes of the general government should be presented. As this land was surveyed, and had been for 10 years, there appears to have been no reason why Cahalan did not initiate some proceedings to obtain title to it. It was decided by this court at this term, in the case of *Railroad Co. v. Sanders*, 46 Fed. Rep. 239, that the filing of the plat of the general route of the Northern Pacific Railroad had no bearing upon the question of the grant of land to that company, and that we must look to the condition of the land within the limits of that grant at the time the line of its railroad was definitely fixed in determining what was granted to it. The settlement of Barthelotte upon the land at the time of the establishing of the general route of that road commands no consideration. Looking at the land in dispute when the line of that road was definitely fixed, I cannot see that it appears that said land was otherwise than public land not sold, reserved, or otherwise appropriated, and free from pre-emption or other claims or rights. It was then subject to the grant of said railroad company. Plaintiff is the successor of said company, and has all the right of said company to said land, which would appear to be a title in fee, and was so held to be by this court, at this term, in the case of *Railroad Co. v. Cannon*, 46 Fed. Rep. 237. It appears in plaintiff's complaint that defendant, without plaintiff's consent, entered upon said premises, and took possession thereof. In one part of the answer it is stated that Cahalan, on the 29th day of July, 1880, went into possession of said premises, and used, occupied, enjoyed, and possessed the same, and the whole thereof, up to the 21st day of March, 1889; and in the closing part of said answer there is a denial that plaintiff or the Northern Pacific Railroad Company were either in the possession of said premises, or any part thereof, at any time. These are inconsistent averments; and here again I think the pleading must be construed most strongly against the defendant, and the former of these allegations must be taken as true for the purposes of the demurrer. It is hardly proper, in a sworn answer, as this is, to make such inconsistent allegations. Considering, then, that plaintiff was in possession of the premises, and the defendant without his consent went into the possession of the same, and ousted plaintiff therefrom, and we have a case within the rule expressed in *Atherton v. Fowler*, 96 U. S. 513. In that case the court held that no pre-emption right could be initiated by a settlement and improvement on a tract of public land where the claimant forcibly intruded upon the possession of one who had already settled upon, improved, and inclosed that tract. For the reasons above assigned the demurrer to the answer of defendant is hereby sustained.